UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AHMED EISSA,<br><br>    Plaintiff,<br><br>v.<br><br>LEDVANCE LLC, KARSTEN FETTEN, MARCI PIPER and ALAN BARLOW,<br><br>    Defendants. | Case No.: 1:21-cv-11515 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**PARTIAL MOTION TO DISMISS**

Defendants LEDVANCE LLC ("LEDVANCE" or the "Company"), Karsten Fetten ("Fetten"), Marci Piper ("Piper"), and Alan Barlow ("Barlow")(collectively, the "Defendants") submit this memorandum of law in support of their partial motion to dismiss certain Counts of the Complaint filed by plaintiff Ahmed Eissa ("Plaintiff") in the Superior Court of the Commonwealth of Massachusetts, Middlesex County, on or about July 23, 2021 and removed to this Court on September 15, 2021.

### I. RELEVANT ALLEGATIONS OF THE COMPLAINT

The facts cited herein are taken from the Complaint filed in this action, which was removed to this Court on September 15, 2021 [Dkt. 1.1] (the "Complaint").[1]  Plaintiff, a Middle-Eastern male and native of Egypt, is a former employee of LEDVANCE, who was employed with the Company from August 30, 2018 until August 7, 2020.  Complaint ¶¶ 7, 9.  In October 2019, Mr. Eissa's wife gave birth to their first child.  Id. at ¶¶ 9, 11.  Plaintiff approached Piper, a

---

[1] Plaintiff's factual allegations are taken as true for purposes of this motion.  Defendants reserve all rights, denials and defenses.

Human Resources representative at LEDVANCE, sometime in November 2019 regarding a potential leave of absence in connection with the birth of his child. Id. at ¶¶ 11-12. Plaintiff alleges that Piper told him he could take 12 weeks of family leave, but discouraged him to do so. Id. at ¶ 12. Plaintiff also alleges that on November 19, 2019, he discussed his request for a paternity leave with his supervisor, Fetten. Id. at ¶ 15. Plaintiff said that he planned to travel to Egypt while on leave to get help from their extended family. Id. However, Fetten did not approve Plaintiff's request for a full, uninterrupted 12-week paternity leave, and instead explored a potential part-time work option, which Piper had allegedly proposed. Id. at ¶ 16. On December 17, 2019, Plaintiff emailed Barlow, the Company's Vice President of Human Resources, regarding his communications with Fetten and Piper, and Barlow responded to that email. Id. at ¶ 19. The email exchange between Plaintiff and Barlow is attached hereto at **Exhibit A**.[2] In his email, Barlow confirmed that Plaintiff has a legal right to take 12 weeks of job-protected parental leave. Ex. A. Barlow also stated that Plaintiff's employment with LEDVANCE will not be jeopardized by taking this leave, and that his continued position with the Company will be "no different than if [he] had not taken this leave." Plaintiff thanked Barlow for the clarification. Id. Plaintiff complains that Barlow did not: deny anything about Plaintiff's communications with Piper and Fetten, say that Plaintiff was not required to work while on leave, or say that Piper's and Fetten's conduct was unlawful. Compl. ¶¶ 21-22.

---

[2] Since the Complaint refers to and relies upon that email exchange, the court may properly review it as part of Defendants' motion to dismiss without converting the motion to a motion for summary judgment. See Clorox Co. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (in considering a motion to dismiss, a court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint"); Rule v. Mass. Mut. Life Ins. Co., No. SUCV201401811, 2015 WL 10059366, *1 at n. 2 (Mass. Super. Ct. May 8, 2015) (in ruling on a motion to dismiss, a court may consider "any documents of which the plaintiff had notice, or on which it relied in framing the complaint") (citing Golchin v. Liberty Mut. Ins Co., 460 Mass. 222, 224 (2011) and other cases), aff'd, 89 Mass. App. Ct. 1121 (Mass. App. Ct. 2016).

LEDVANCE approved Plaintiff for intermittent parental leave, at fifty percent (50%) and he was required to work the other fifty percent (50%) from Egypt. Id. at ¶ 25. Plaintiff's leave began in December, 2019. See Ex. A (noting that Plaintiff planned to start his leave of absence "towards the end of the year" and referencing the "very short time left" before his planned travel). Although Plaintiff's leave was set to end in March 2020, as a result of the COVID-19 pandemic, he remained in Egypt and on intermittent FMLA leave. Compl. ¶¶ 37, 46. Plaintiff returned to the United States on July 24, 2020. Id. at ¶ 43. His employment with the Company ended on August 7, 2020 in connection with a reduction in force. Id. at ¶¶ 9, 50.

On October 30, 2020, Complainant filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") against the Defendants (the "Charge"). Plaintiff later withdrew the Charge from the MCAD, and the MCAD issued him a right to sue letter on August 20, 2021. A copy of the Charge and the MCAD right to sue letter are attached hereto at **Exhibit B** and **Exhibit C**, respectively.[3] The Complaint largely repeats the allegations in the Charge, but adds new counts (Seven, Eight and Nine) under Massachusetts common law.

## II. ARGUMENT

### a. Legal Standard

A court should dismiss a Complaint when its allegations fail to state a claim upon which relief can be granted. F.R.C.P. 12(b)(6). To survive a motion to dismiss, the Plaintiff must plead

---

[3] The Complaint references neither the Charge nor the right to sue letter. Defendants have attached copies of both to their Motion and request that the Court take judicial notice of such documents as public records. See Campbell v. Bristol Community College, 16-11232-FDS, 2017 WL 722572, at *1, n. 1, Saylor, J. (D. Mass. Feb. 23, 2017) (courts may take judicial notice of MCAD documents without converting the motion to dismiss to a motion for summary judgment) (collecting cases). Alternatively, Plaintiff's failure to include such details in the Complaint, which establish this court's jurisdiction over his claims under c. 151B and Title VII, constitutes further grounds for dismissing them.

"factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief, in order to 'reflect[ ] the threshold requirement of [Mass. R. Civ. P.] 8 (a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (citing Twombly, 550 U.S. at 556).  Although the court is required to accept the allegations in the Complaint as true and construe all reasonable inferences in favor of the Plaintiff, the court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996); see also Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996) and Iqbal, 556 U.S. at 663 (noting that a court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements").  Moreover, "[a]ffirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense are clear 'on the face of the plaintiff's pleadings.'"  Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F. 3d 315, 320 (1st Cir. 2008).

The Counts below fail to state any claim for relief pursuant to the well-established pleading standards of Iannacchino, Iqbal and Twombly, and must be dismissed.

### b. Counts One through Four Alleging Violation Of c. 151B And Title VII Based On  Conduct Arising Before January 4, 2020 Must Be Dismissed

Before filing a civil action for alleged employment discrimination under both M.G.L. Ch. 151B and Title VII, a plaintiff must first file a timely charge of discrimination with the MCAD and/or the Equal Employment Opportunity Commission.  Campbell, 2017 WL 722572 at *3 (citing Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996)). Charges alleging

discrimination under M.G.L. Ch. 151B (including alleged violation of the Massachusetts Parental Leave Act ("MPLA"), which falls within the MCAD's jurisdiction) and Title VII must be filed within 300 days of the alleged wrongful act. Id; see also 804 CMR §1.04(3); M.G.L. c. 151B, § 5; 42 U.S.C. § 200e-5(e)(1). Plaintiff filed his Charge on October 30, 2020. See Ex. B. Therefore, any events that occurred before January 4, 2020, including (i) the alleged statements attributed to Piper on November 14, 2019 and Mr. Fetten on November 19, 2019, respectively, (ii) Barlow's response to Eissa's email dated December 17, 2019; and (ii) the alleged discriminatory failure by LEDVANCE to grant Plaintiff a leave of absence under the MPLA (which he sought in November 2019 and began in December 2019), are time-barred. See Hall v. FMR Corp., 667 F. Supp. 2d 185, 196, n. 10 (D. Mass. 2009) ("The failure to file a timely charge of discrimination with the MCAD requires the dismissal of any subsequent lawsuit.")(citing Davis v. Lucent Techs., Inc., 251 F.3d 227, 231 (1st Cir. 2001) and Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 531 n.11 (2001)).

The recent Supreme Judicial Court decision in Shaw's Supermarkets, Inc. v. Melendez, SJC-13054, 202 WL 4005920 (Mass. Sept. 3, 2021) does not alter this result. In Shaw's, the SJC held that an Order which the Court issued on June 24, 2020 in light of the COVID-19 pandemic (the "Order"), required the tolling of the statute of limitations in civil actions for the period from March 17, 2020 to June 30, 2020. Id. However, the Order does not apply to the deadline for filing a Charge with the MCAD. First, the Order on its face applies to civil actions; a proceeding before the MCAD is not a "civil action" but an administrative proceeding. Moreover, the courts (including the SJC) have no powers over the process for filing a charge of discrimination with the MCAD, which rests with the Commission. See M.G.L. c. 151B, § 3 (noting that the Commission "shall have the following functions, power and duties", including "[t]o adopt,

promulgate, amend, and rescind rules and regulations suitable to carry out the provisions of this chapter, and the policies and practice of the commission in connection therewith").

Pursuant to its statutory powers, the MCAD has issued procedural regulations, which allow the tolling of the 300-day filing requirement for 151B actions under limited circumstances. See 804 Code Mass. Regs. § 1.04(4). Importantly, the MCAD adopted its own process for addressing the COVID-19 pandemic, pursuant to which individuals who wish to extend a filing deadline are required to submit a request to the MCAD. See MCAD COVID-19 Information & Resource Center, at https://www.mass.gov/guides/mcad-covid-19-information-resource-center. The MCAD determines whether to grant such request on a case-by-case basis. Id. The Complaint does not allege that Plaintiff sought or received an extension of the filing deadline from the MCAD. Therefore, this Court is without jurisdiction over, and must dismiss, Plaintiff's claims under Counts One and Three based on conduct arising more than 300 days before October 30, 2020 (i.e., before January 4, 2020), including the alleged denial of his leave, the alleged comments by Piper and Fetten in 2019, and Barlow's alleged response thereto, and Count Two under the MPLA, which is similarly untimely. See Buntin v. City of Boston, 91 Mass. App. Ct. 1128, 2017 WL 2644377, *2 (2017) (Mass. App. Ct. Rule 1:28) (where a plaintiff has failed to file a charge with the MCAD within 300 days of an allegedly discriminatory act, "the Superior Court lacks jurisdiction to entertain claims under c. 151B" relating to those events).[4]

---

[4] Even if this Court were to determine that the Order tolled the filing of the Charge with the MCAD, it must still dismiss all counts under Title VII based on conduct that arose before January 4, 2020, because the Order cannot toll the statute of limitations applicable to Plaintiff's *federal* claims. See Willard v. Indus. Air, Inc., No. 1:20-CV-00823, 2021 WL 309116, *3 (M.D.N.C. Jan. 29, 2021) (holding that limitations period to file Title VII claim was governed by federal law and was not extended by North Carolina's tolling order) (citing DelCostello v. Int'l Bd. of Teamsters, 462 U.S. 151, 159 n.13 (1983) ("[T]he choice of a limitations period for a federal cause of action is itself a question of federal law.")).

Because Plaintiff's claim against LEDVANCE based on the alleged denial of his parental leave must be dismissed, Count Four against the individual Defendants, arising from the same allegations, similarly fails and must be dismissed. Sisco v. DLA Piper LLP, 833 F. Supp. 2d 133, 147 (D. Mass. 2011) ("Claims under Chapter 151B are 'derivative' of underlying discrimination claims, so there can be no liability for aiding and abetting discrimination absent a meritorious underlying claim of discrimination.")(citing Abramian v. President & Fellows of Harvard Coll., 432 Mass. 107 (2000)).

### c. **Count Two Must Be Dismissed Because Plaintiff Is Not Entitled To The Protection of the Massachusetts Parental Leave Act**

Count Two against LEDVANCE alleging a violation of the MPLA, and Count Four against the individual Defendants based on the same, must be dismissed because Plaintiff's leave was not entitled to protection under such statute. Indeed, the MPLA entitles eligible employees to an unpaid leave of absence of up to eight (8) weeks "*for the purpose of*" giving birth to a newborn or adopting a child. M.G.L. ch. 149, § 105D (emphasis added). Although the law does not specify when MPLA leave begins, the MCAD guidelines interpreting the law clarify that MPLA leave is available "at the time of the birth," but not "substantially earlier or later." MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION: PARENTAL LEAVE (rev'd 2017) (the "Guidance"), attached hereto at **Exhibit D**. The MCAD Guidance is entitled substantial deference from this court. Global NAPS, Inc. v. Awiszus, 475 Mass. 489, 496-97 (2010).

Plaintiff's child was born in October, 2019. Compl. ¶ 11. Yet, Plaintiff did not inquire about a potential leave of absence until November 2019, and his leave began in late December 2019, two months after the child's birth. See id. at ¶¶ 11, 15; Ex. A. Plaintiff's absence cannot be said to have occurred "at the time of" his child's birth. See Awiszus, 475 Mass. at 498 (holding that female employee who was absent for more than eight weeks was not protected by

the MPLA). In fact, had Plaintiff's leave began on the birth of his child, as contemplated by the statute, he would have entirely *exhausted* his leave entitlement under the MPLA by the time his leave actually began. To allow Plaintiff to maintain a claim under the MPLA under such circumstances would effectively read the phrase "for the purpose of" out of the statute and would be contrary to the Legislature's intent in passing the law. See id. at 496 ("Where, as here, the language is unambiguous, it is conclusive as to the intent of the Legislature."). Therefore, Count Two must be dismissed. As noted in Section II.b supra, Count Four against the individual Defendants must similarly be dismissed, to the extent such count is based on the same allegations giving rise to Count Two.

### d. Count Four Must Be Dismissed Because Plaintiff Cannot Meet The Elements of the Claim As To Any Of The Individual Defendants

Count Four does not specify the alleged conduct by any of the individual Defendants giving rise to the violations of M.G.L. c. 151B or Title VII, but reincorporates the allegations in the Complaint by reference. To the extent that Court Four relies on Plaintiff's termination from LEDVANCE, the Complaint is entirely devoid of any allegations regarding any of the individual Defendants' role in Plaintiff's termination (in fact, the Complaint does not allege any conduct by Barlow or Piper *whatsoever* after Plaintiff's leave request in 2019). To the extent Count Four is premised on the alleged denial of Plaintiff's parental leave, such claim must be dismissed. See supra, Section II.b and c.

Count Four also fails as a matter of law because Plaintiff has not alleged facts sufficient to establish the elements of the claim. In order to prevail on an aiding and abetting claim under M.G.L. c. 151B, "a plaintiff must show that (1) that the defendant committed 'a wholly individual and distinct wrong ... separate and distinct from the claim in main'; (2) 'that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender'; and

(3) that 'the aider or abetter knew of his or her supporting role in an enterprise designed to deprive [the plaintiff] of a right guaranteed him or her under G.L. c. 151B.'" Lopez v. Com., 463 Mass. 696, 713 (2012) (citing Harmon v. Malden Hosp., 19 Mass. Discrimination L. Rep. 157, 158 (1997)).  Plaintiff has not alleged any act by Piper and Fetten, which is separate and distinct from the allegations against the other Defendants; rather, the aiding and abetting claims against Piper and Fetten are premised on the same conduct upon which he bases his discrimination claim, requiring dismissal of Count Four against them.  See Sisco, 833 F. Supp. 2d at 147 (in order to be entitled to relief for "aiding and abetting" discrimination, plaintiff must demonstrate a "wholly individual and distinct wrong" by the individual defendant that is "separate and distinct from the claim in main"); Saari v. Allegro Microsystems, LLC, 436 F. Supp. 3d 457, 466 (D. Mass. 2020) (dismissing aiding and abetting discrimination claims premised on the same conduct); Lopez, 463 Mass. at 714.

As for Barlow, the allegations against him are based entirely on his email exchange with Plaintiff.  However, in his email to Plaintiff, Barlow reiterates Plaintiff's right to take 12 weeks of job-protected parental leave.  See Ex. A.  Given Barlow's email, any inference that he shared Piper's or Fetten's intent to discriminate, or that he knew of his "supporting role in an enterprise designed to deprive [Plaintiff] of a right guaranteed him [. . .] under G.L. c. 151B," is simply not plausible.  This is not a situation in which a supervisor, having knowledge of discrimination or harassment by another employee, failed to act.  Barlow did act, and reiterated Plaintiff's right to take 12 weeks of parental leave.  The email, sent by the Company's Vice President of Human Resources, remedied any incorrect or unlawful statement by Piper and Fetten with respect to Plaintiff's leave entitlement.  Plaintiff does not allege that he sought, and was denied, 12 weeks of parental leave on a full-time basis *after* receiving Barlow's email.  Therefore, Plaintiff has no

viable claim against Barlow for aiding and abetting.  See Gledhill v. Univ. of Mass. Medical School, 23 Mass. L. Rptr. 130, 2007 WL 3012904, *5 (Mass. Super. Ct. Sept. 17, 2007)(finding no aiding and abetting liability for supervisor who "did not simply acquiesce in or impliedly condone" the wrongful conduct) (citing Chapin v. Univ. of Mass. at Lowell, 977 F. Supp. 72, 80 (D. Mass. 1997) (finding that SJC would require a plaintiff to prove that a supervisor knew of the prohibited discrimination or harassment, failed to act on it, and that such failure to act caused injury to the plaintiff)).

Lastly, Plaintiff cannot bring claims under Title VII against the individual Defendants, as there is no individual liability under the statute.  See Fantini v. Salem State Coll, 557 F.3d 22, 31 (1st Cir. 2009) (holding that "there is no individual employee liability under Title VII").  Therefore, Count Four under Title VII must be dismissed.

### d.  Count Five Against Barlow Must Be Dismissed

Plaintiff brings a count against Barlow for a willful violation of the federal Family and Medical Leave Act ("FMLA") based on Barlow's alleged failure to properly address the concerns Plaintiff raised about Piper and Fetten.  Compl. ¶¶ 21-22.  Specifically, Plaintiff alleges that Barlow did not deny Plaintiff's communications with Piper and Fetten; that he did not take any remedial action regarding Piper and Fetten; and that Barlow did not inform Plaintiff that he (Plaintiff) was not required to work while or leave or that Piper's and Fetten's conduct was "not only inappropriate but unlawful."  Id.  These allegations are directly refuted by Barlow's email to Plaintiff, in which Barlow confirms Plaintiff's right to take 12 weeks of unpaid leave under the FMLA, and Plaintiff's response thereto, thanking Barlow for the clarification.  See Ex. A.  Barlow's email was a consistent statement of Plaintiff's rights under the FMLA.  The Complaint does not allege any wrongful conduct by Barlow that violates the FMLA and for which Plaintiff can recover.  Therefore, Count Five against Barlow must be dismissed.

### e. Count Seven Alleging Intentional Interference With Advantageous/ Contractual Relationship Must Be Dismissed Because Plaintiff Has Failed to Allege Facts Sufficient to Meet At Least Two Elements of the Claim

To succeed on a claim for tortious interference (Count Seven), Plaintiff must prove that: (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the individual Defendants knowingly induced a breaking of the relationship; (3) the Defendants interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions. Blackstone v. Cashman, 448 Mass. 255, 260 (2007). Where, as here, the claim arises in the employment context and involves a corporate official acting within the scope of their employment responsibilities, a plaintiff must show an additional element, namely, that "the 'controlling factor' in the alleged interference" was "actual malice." See id., 448 Mass. at 270; Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 781-82 (2001); Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 663-64 (1981); Hall, 667 F. Supp. 2d at 205 (citation omitted). Courts interpret the term "corporate official" expansively. Blackstone, 448 Mass. at 266. Thus, the term has been applied to high level corporate officers and immediate supervisors. See id. (citations omitted); see also Gram, 384 Mass. at 663. Under this standard, each of the individual Defendants is a "corporate official."

Courts define malice as "'a spiteful, malignant purpose, unrelated to the legitimate corporate interest'" of the employer. Blackstone, 448 Mass. at 261 (citation omitted). The Complaint does not allege malice by any of the individual Defendants under the applicable legal standard. In fact, the Complaint is entirely devoid of any allegations that any of the individual Defendants took any action that caused LEDVANCE to end Plaintiff's employment with the Company. Therefore, Count Seven fails to allege sufficient facts to establish at least two of the elements of the claim, and must be dismissed.

### f. Count Eight Must Be Dismissed As Barred by the Exclusivity of the Workers' Compensation Statute

In Count Eight, Plaintiff brings claims for intentional infliction of emotional distress ("IIED") against the individual Defendants. Such a claim is barred by the exclusivity provision of the Massachusetts Workers' Compensation Act, M.G.L. c. 152, § 24 et seq. ("WCA"). "Compensation under the [WCA] is the exclusive remedy for injuries to an employee suffered in the course of employment, regardless of the wrongfulness of the employer's conduct [. . .] or the foreseeability of harm." Estate of Moulton v. Puopolo, 467 Mass. 478, 482-83 (2014) (citation omitted); see also Green v. Wyman-Gordon Co., 422 Mass. 551, 558-59 (1996)(holding that exclusivity provision of Workers' Compensation Act barred common law claims for intentional and negligent infliction of emotional distress); Spencer v. MBTA, No. 17-11229-FDS, 2019 WL 2394151, *11-12 (D. Mass. Jun. 5, 2019). The WCA also bars a plaintiff from recovering from a fellow employee in tort, if that employee's behavior arose in the course of the employment relationship and in furtherance of the employer's interests. See Anzalone v. MBTA, 403 Mass. 119, 124 (1988); Green, 422 Mass. at 558 ("It makes no difference that the emotional distress results from a fellow employee since the injury is still compensable under the workers' compensation act"). The "broad 'course of employment' test" looks at "whether, at the time of the injury, the coemployee acted in some way related to his or her employment." Fredette v. Simpson, 440 Mass. 263, 267 (2003). Further, "an employee has acted in the course of employment even if he has more than one purpose for doing an act, as long as one significant purpose is related to the employment." Id. at 266. "An objective test is used to assess whether the coemployee acted in the course of his employment *or at least in part* for a job-related purpose." Id. (italics added).

The Complaint does not specify the alleged acts that Plaintiff contends constituted "intimidating and intentional conduct" giving rise to the IIED claim. Compl. ¶ 103. In fact, the Complaint alleges no wrongdoing whatsoever by Piper or Barlow following the alleged denial of Plaintiff's request for full-time parental leave. Regardless, all of the acts the Complaint ascribes to the individual Defendants arose at work, while Fetten was acting as Plaintiff's supervisor and Piper and Barlow were acting as human resources representatives for LEDVANCE, and in response or related to Plaintiff's request for a leave of absence from and/or return to work. There is no allegation that the alleged wrongful conduct was completely unrelated to such individuals' positions with the Company, nor could any reasonably be made. Therefore, the individual Defendants' alleged conduct was within the course of their employment, and the WCA bars Plaintiff's IIED claim. See Fredette, 440 Mass. at 268; Anzalone, 403 Mass. at 124-25; Fusaro v. Blakely, 40 Mass. App. Ct. 120, 122-24 (1996)(same).[5]

### g. Count Nine Must Be Dismissed Because Plaintiff Does Not Allege That LEDVANCE Terminated Him To Retain Earnings Due For Past Services

In Count Nine, Plaintiff alleges that LEDVANCE's conduct breached the implied covenant of good faith and fair dealing ("GFFD"), as a result of which he has suffered "humiliation, mental pain and anguish." Compl. ¶¶ 109-111. These allegations are insufficient as a matter of law. In order to bring a viable claim for GFFD violation, Plaintiff must allege that LEDVANCE discharged him in order to deprive him of earned and "readily definable" compensation for "past service." See Gram v. Liberty Mutual Ins. Co., 391 Mass. 333, 335 (1984); Fortune v. Nat'l Cash Register Co., 373 Mass. 96, 100-05 (1977) (recognizing a limited GFFD claim in the

---

[5] The Complaint also fails to allege that the individual Defendants' conduct was extreme and outrageous or that the emotional distress Plaintiff suffered was severe, as is required to properly plead an IIED claim, which further supports the dismissal of Count Eight. See Brown v. Nutter, McClennen & Fish, 45 Mass. App. Ct. 212, 218-19 (1998)).

employment context); Grant v. Target Cor., 126 F. Supp. 3d 183, 190 (D. Mass. 2015), Burroughs, J. ("Thus, damages for GFFD claims have been limited to compensation 'that [the employee] had fairly earned and legitimately expected.'")(citing King v. Driscoll, 424 Mass. 1, 7 (1996)).  The employer's bad faith alone does not give rise to an enforceable GFFD claim – there must be an effort by the employer to deny the employee compensation for past service, to the employer's unjust enrichment.  See King, 424 Mass. at 6.  Plaintiff's bald allegations do not meet this requirement.  Therefore, Count Nine must be dismissed.  See Grant, 126 F. Supp. 3d at 189 (dismissing GFFD claim where plaintiff only alleged loss of future income, reputational injury, and emotional distress, which are not recoverable under a GFFD cause of action).

### III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion, dismiss the aforementioned Counts, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

LEDVANCE LLC, Marci Piper, Karsten Fetten and Alan Barlow,
By their attorneys,

*/s/ Stephanie Smith*
Stephanie Smith (BBO #660572)
CASNER & EDWARDS, LLP
303 Congress Street
Boston, Massachusetts  02210
Telephone:  617-426-5900
Facsimile:   617-426-8810
Email: smith@casneredwards.com

Dated: September 22, 2021

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 22, 2021.

                                                                               */s/ Stephanie Smith*
                                                                               Stephanie Smith