IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AHMED EISSA, | Case No.: 1:21-cv-11515 |
| Plaintiff, | |
| v. | |
| LEDVANCE LLC, KARSTEN FETTEN, MARCI PIPER and ALAN BARLOW, | |
| Defendants. | |

## DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
### (Leave to File Granted on November 4, 2021)

Pursuant to the Court's order [Docket No. 13] permitting them to file the reply below,

Defendants LEDVANCE LLC, Karsten Fetten, Marci Piper and Alan Barlow ("Defendants")

hereby reply to the Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss

("Opposition").

**I.     The Legislative History Of The Massachusetts Parental Leave Act And Its Amendments Make Clear That The Statute Does Not Protect A Leave Of Absence Which Begins Two Months After The Birth Of The Child**

The Massachusetts Parental Leave Act (the "MPLA"), as currently enacted and as applied to

Plaintiff's 2019 leave of absence, provides in relevant part:

> b) An employee who has completed the initial probationary period set by the terms of employment, not to exceed 3 months, [or …], shall be entitled to 8 weeks of parental leave **for the purpose of giving birth or for the placement of a child** under the age of 18, […] for adoption with the employee who is adopting or intending to adopt the child; provided, however, that any 2 employees of the same employer shall only be entitled to 8 weeks of parental leave in aggregate **for the birth or adoption** of the same child. […]."

M.G.L. ch. 149, Sec. 105D (bold added).  The statute, by its plain language, expressly applies

only when parental leave is sought "for the purpose of" giving birth or adopting a child.  Mass.

Community College Council v. Labor Relations Comm'n., 402 Mass. 352, 354 (1988) ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the court is to enforce it according to its terms.").  Thus, if an employee seeks leave in connection with the birth of a child, leave is available at the time of the birth, but not "substantially earlier or later." MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION: PARENTAL LEAVE (rev'd 2017) (the "Guidance").  In the case of adoptive parents, leave is available at the time of the adoption.

Plaintiff admits that his child was born on October 26, 2019 and that his leave of absence began more than two months later, on December 30, 2019.  Opposition, pp. 6, 14.  Yet, Plaintiff claims that his leave qualified for protection under the MPLA because he inquired about a potential leave of absence three weeks after the birth of his child, claiming that his request was "prompt, timely and well within the parameters of the MPLA."  Id. at 7.  However, when parental leave is *sought* is irrelevant to the issue of when leave must be *taken* in order to qualify for protection under the statute.[1]  A contrary finding could lead to absurd results and allow, for example, an employee to take parental leave three months after the birth of the child by submitting a request for leave at the time of the birth.  Plaintiff's reading of the MPLA would render the words "for the purpose of" meaningless, a result which courts disfavor.  See Flemings v. Contributory Retirement Appeal Bd., 431 Mass. 374, 375 (2000) ("In interpreting statutes, '[n]one of the words of a statute is to be regarded as superfluous, but each is to be given its ordinary meaning without overemphasizing its effect upon the other terms appearing in the statute'")(citation omitted); Akebia Therapeutics, Inc. v. Azar, 976 F.3d 86, 94 (1st Cir. 2020).

---

[1] The MPLA requires an employee to provide at least 2 weeks' notice to the employer of the anticipated date of departure. M.G.L. ch. 149, Sec. 105D(b).  The notice requirement does not address when the leave must begin to qualify for protection under the MPLA.

Although the statute is unambiguous, a brief review of the MPLA's legislative history bolsters the conclusion that leave must be taken at the time of the birth to fall within the law's ambit.  See Hunters Brook Realty Corp. v. Zoning Bd. of Appeals of Bourne, 14 Mass. App. Ct. 76, 81 (1982) (legislative history may help decide disputes regarding the interpretation of a statute).

As originally enacted in 1972, the MPLA was captioned "An Act Requiring Employers To Grant Maternity Leave to Certain Employees" and allowed eligible *female* employees to take a leave of absence "for a period not exceeding eight weeks for the purpose of giving birth, *said period to be hereinafter called maternity leave*."  1972 Mass. Acts 770, attached hereto at **Exhibit A** (italics added).  As such, the statute provided for maternity leave to birthing mothers only.  The MPLA was amended in 1984 ("An Act Relative to Adopting Mothers") to provide similar maternity leave rights to female employees who adopt a child under the age of three.  See 1984 Mass. Acts 900, attached hereto at **Exhibit B**. In 1989, the adoptive right was expanded to cover the adoption of a child under the age of 18 (or under the age of 23, if the child is disabled). See 1989 Mass. Acts 642-43, attached hereto at **Exhibit C**.  Importantly, despite these amendments, the law continued to apply only to female employees.  The statute was significantly amended in 2015, when Governor Patrick signed "An act relative to parental leave."  St. 2014, c. 484 (hereinafter, the "2015 Amendment"), attached hereto at **Exhibit D**.  Among other things, the 2015 Amendment converted Massachusetts' maternity leave law into a *parental* leave, thereby making the leave of absence available to both men and women.  Importantly, the 2015 Amendment, which is the current version of the law and applies to Plaintiff's leave, did not modify the requirement that leave be taken "for the purpose of" giving birth or adopting a child. *Compare* 2015 Amendment, at Exhibit D, *with* 1972 statute, at Exhibit A.

Had the Massachusetts legislature intended to allow employees to take a leave of absence starting substantially after the birth of the child, it could have provided so, but chose not to. For example, the Massachusetts legislature could have modified the statute to bring it in line with the federal Family and Medical Leave Act of 1993 ("FMLA"), which provides eligible employees up to 12 weeks of unpaid parental leave during the 12-month period after the birth or adoption of a child. See 29 U.S.C. § 2612(a)(2); 29 C.F.R. § 825.120(a)(2). Likewise, in 2018, Massachusetts enacted a sweeping paid family and medical leave law ("PFML"). M.G.L. ch. 175M § 1 et seq. Like its federal counterpart, the PFML allows eligible employees to take up to 12 weeks of family leave during the first 12-month period after the birth, adoption, or placement of a child. Id. at §2(a)(1). The legislature did not amend or abolish the MPLA after it passed the PFML. To the contrary, although the two types of leave run concurrently where applicable, an employee who has exhausted his PFML leave entitlement for the applicable benefit year may *still* take another eight weeks of unpaid time off under the MPLA for the birth or adoption of a child in the same year. 458 C.M.R. § 2.01(3); MCAD Guidance at page 7 (indicating that "an employee may take a maternity leave each time she gives birth or adopts a child").

The history of the MPLA's enactment and amendments evidences a clear legislative intent to allow employees to take a leave of absence starting on or around the time of the birth. The law, as originally enacted, provided only a right to maternity leave to birthing mothers; such a leave necessarily begins on the birth of the child (or shortly before, to prepare for the birth). Although the MPLA was amended several times, none of the amendments changed the requirement that leave be taken "for the purpose of" giving birth or adopting a child. Therefore, the MPLA entitles employees to take leave starting on or around the birth or adoption, but not two months later. As such, Plaintiff's leave fell outside the purview of the MPLA.

**II.     The Cases Cited By Plaintiff Do Not Support A Finding Of Individual Liability Under The Facts Alleged In The Complaint**

In the Opposition, Plaintiff states that an "aiding and abetting" claim against Defendant Barlow can be sustained based on his alleged inaction in response to Defendants Piper's and Fetten's alleged wrongful conduct.  Specifically, the Complaint alleges that Barlow failed to:

- Deny anything about Mr. Eissa's communications with Defendants Piper and Fetten; (Compl., ¶ 21)
- Take any remedial action concerning Defendants Piper or Fetten's actions; (Id.)
- Inform Plaintiff that he was not required to work during his leave; (Id. at ¶ 22)
- That Defendants Piper's and Fetten's conduct was "not only inappropriate but unlawful"; (Id.)

To the contrary, Barlow's response to Plaintiff's email dated December 17, 2019[2] (referenced in the Complaint and a copy of which is attached as Exhibit A to Defendants' Partial Motion to Dismiss) made clear that Plaintiff was legally entitled to take 12 weeks of parental leave and that his employment would not be jeopardized by taking this leave.  Plaintiff replied, thanking Barlow for the clarification.  Id.  Barlow's email cured any incorrect information that may have been provided by Piper or Fetten.  Plaintiff does not allege that he sought, and was denied, a parental leave on a full-time basis after this email.  As such, no further action by Barlow was required.

In the Opposition, Plaintiff cites a number of cases for the proposition that Barlow may be held individually liable under an "aiding and abetting" theory because he failed to investigate or "protect the Plaintiff from discrimination."  However, those cases are inapplicable, as they involve allegations that a supervisor's knowledge of and failure to remedy unlawful workplace harassment caused plaintiff injury.  For example, in Chapin, a university police officer brought an aiding and abetting claim against the police chief, alleging that he "knew or should have

---

[2] Defendants dispute Plaintiff's characterization of his December 17, 2019 email to Barlow.

known" of the sexual harassment to which she was subjected but did nothing to stop it, and that such inaction caused her injury.  Chapin v. Univ. of Mass., 977 F. Supp. 72 (D. Mass. 1997). The court found that these allegations were sufficient to withstand a motion to dismiss.  In reaching its ruling, the court relied on three MCAD decisions for the proposition that "the ['[f]ailure to investigate gives tacit support to the discrimination because the absence of sanctions encourages abusive behavior.'" Id. at 78 (citing Jorge v. Silver City Dodge, 15 MDLR 1518, 1531 (MCAD 1993) and Przybycien v. Aid Maintenance Co., 13 MDLR 1266, 1283 (MCAD 1991)).  The Chapin court also noted that "the MCAD has held a supervisor individually liable for aiding and abetting discrimination for acquiescence in a retaliatory firing of an employee who complained about sexual harassment." Id. (citing Hope v. San Ran, Inc., 8 MDLR 1195, 1211 (MCAD 1986)).

However, Chapin's and Plaintiff's reliance on Jorge and Przybycien is misguided, as neither of these cases dealt with the issue of individual liability.  Both decisions are attached hereto at **Exhibits E** and **F**, respectively.  Jorge, a female employee, complained that she was subjected to lewd comments and unwanted touching by supervisors to a manager, who promised to investigate her claims. The manager met with the alleged harassers, who denied the allegations. Plaintiff was transferred to another position, while the harassers went unpunished. She eventually quit.  The Commission concluded that Silver City Dodge was liable for the supervisors' harassment, noting that "[a]n employer is liable for failing to eradicate hostile or offensive work environment, and has an affirmative duty to investigate complaints of sexual harassment and deal appropriately with the offending personnel."  Therefore, Jorge deals with an *employer's* failure to investigate as lending tacit support for unlawful harassment, not whether the manager's action or inaction supported a separate aiding and abetting claim against him.

Likewise, <u>Przybycien</u>  involved the repeated sexual harassment of a female employee by her immediate supervisor.  Przybycien reported the harassment to the alleged perpetrator's supervisor. Although the supervisor planned to meet with all parties and a witness, he only interviewed the perpetrator, who denied the allegations.  When the harassment continued, the supervisor transferred Przybycien to another location. However, the harassment continued, prompting Przybycien to resign.  The Commission found these facts sufficient to establish liability *against the employer* based on the creation of a hostile work environment.  In doing so, the MCAD noted that ""[e]mployers have an affirmative duty to eradicate hostile or offensive work environments and including an affirmative duty to investigate complaints of sexual harassment and to deal appropriately with the offending personnel."  <u>Id</u>. at 18.  Thus, <u>Przybycien</u> did not interpret the aiding and abetting provision of M.G.L. ch. 151B.

<u>Hope v. San-Ran, Inc.</u> is the only MCAD decision cited in <u>Chapin</u> which involves an finding of individual liability for aiding and abetting.  However, the case is distinguishable on its facts.  The plaintiff in <u>Hope</u> brought a complaint of sexual harassment by her supervisor to San Ran's general manager.  After the general manager confronted the supervisor about Hope's complaints, the supervisor began monitoring her performance and noting any incident that could be used to fire her.  A year later, the supervisor fired Hope, for trivial reasons.  When she reached out to the general manager to complain, he asked for time to look into the situation, but he never followed up with Hope as promised.  Those facts were deemed sufficient to find both the supervisor and the general manager individually liable for aiding and abetting San Ran's unlawful conduct.  Specifically, the hearing officer found that each individual had engaged in separate, illegal acts in that they "respectively sought and acquiesced in the termination of Constance Hope when she refused to put up with and complained about sexual harassment."

Therefore, the aiding and abetting liability did not rest on mere inaction.  Plaintiff's reliance on Semmami v. UG2 LLC, No. 18-cv-12396-DJC, 2019 WL 2249705 (D. Mass. May. 24, 2019) is also misplaced, as the language cited in the Opposition relates to an *employer's* liability for failing to investigate and stop a supervisor's harassment.

The cases cited in the Opposition are distinguishable from the case at bar, in that they involve claims of harassment, which continued unabated after the plaintiff complained of the inappropriate conduct to a supervisor and caused plaintiff harm. Conversely, when Plaintiff reached out to Defendant Barlow with concerns about his parental leave rights, Barlow promptly clarified those rights, consistent with the law.  The Complaint does not allege any other wrongful conduct related to Plaintiff's request for a parental leave after Barlow's response or any injury arising out of Barlow's alleged inaction. Therefore, Barlow's email redressed any potential wrongful conduct by Piper and Fetten, and the aiding and abetting claim against him fails.

Lastly, contrary to Plaintiff's assertion, the Complaint is devoid of any allegations evidencing any joint activity by Barlow, Piper and Fetten or the requisite intent and knowledge of the unlawful enterprise to render themselves individually liable.  See Beaupre v. Cliff Smith & Assocs., 50 Mass. App. Ct. 480, 492 (2000).  Thus, it cannot be said that these individuals "actively and intentionally provide[d] substantial, supporting assistance to intentional conduct that is prohibited by chapter 151." *Compare with* Fisher v. Town of Orange, 885 F. Supp. 2d 468, 476-77 (D. Mass. 2012) (complaint alleging misconduct consisting of pranks, rumor-spreading and verbal harassment).  Therefore, the "aiding and abetting" claim against all three individual Defendants must be dismissed.

III.     **The Continuing Violation Doctrine Does Not Rescue Plaintiff's Untimely Claims**

Plaintiff alleges that Counts I through IV, based on conduct occurring before January 5, 2020, are not time-barred because such conduct falls within the continuing violation doctrine.

However, the overwhelming weight of the federal and state legal authority makes clear that the continuing violation doctrine is unavailable to rescue Plaintiff's untimely claims.

The continuing violation doctrine allows a plaintiff to recover for discriminatory acts that occurred outside the 300-day statute of limitations, when the alleged wrongful conduct is ongoing in nature and at least one related event occurred within the limitations period.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) *abrogated on other grounds*, Lily Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5; Crocker v. Townsend Oil Co., Inc., 464 Mass. 1, 10-11 (2012); Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 533 (2001); 804 Mass. Code Regs. § 1.10(2).   The doctrine is grounded on an acknowledgement that, where no single unlawful event occurs on any particularly identifiable day, a plaintiff may not be on notice that his or her rights have been violated, and such plaintiff should be able to recover from the cumulative effect of defendant's unlawful conduct.  For this reason, the doctrine has typically been applied to hostile work environment claims, which, by their very nature, involve repeated conduct occurring over time, as long as the untimely discriminatory conduct is substantially related to at least one unlawful event occurring within the limitations period.  See Morgan, 536 U.S. at 103 (hostile work environment based on racial harassment); Cuddyer, 434 Mass. at 532-34 (applying doctrine to claim alleging sexual harassment, noting that "[a] plaintiff who claims a hostile work environment, as the plaintiff does here, will often have to establish a continuing violation to recover for otherwise time-barred violations") (citing O'Rourke v. Providence, 235 F.3d 713, 727 (1st Cir.2001)).

On the other hand, where, as here, the gravamen of a plaintiff's claim is based on a discrete event, the plaintiff is placed on notice that he or she may have a potential claim.  See Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination, 808 N.E.2d 257, 266-

67 (Mass. 2004)(to recover under the continuing violation doctrine for untimely acts, a plaintiff generally must show that "earlier violations outside the [] limitations period did not trigger [the plaintiff'] 'awareness and duty' to assert his rights, i.e., that [the plaintiff] could not have formed a reasonable belief at the time the employee actions occurred that they were discriminatory"). In such a case, plaintiff's failure to assert his or her rights in a timely manner will generally be fatal. Thus, Massachusetts federal and state courts alike have held that the continuing violation doctrine is unavailable to rescue untimely claims based on a discriminatory failure to promote, refusal to hire or transfer, or termination decision, even if the effects of such decision are ongoing or the events are related to other timely-filed acts. Morgan, 536 U.S. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify."); Miller v. N.H. Dep't of Corr., 296 F.3d 18, 22 (1st Cir. 2002) (citing Morgan); Everett v. 357 Corp., 453 Mass. 585, 606-07 (2009) (discrete acts are outside the continuing violations doctrine under Massachusetts law). Courts have also held that an employer's denial of an employee's request for an accommodation is a discrete act, as to which the continuing violation doctrine is inapplicable. As such, the clock on such a claim starts running from the date of the denial. Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121 (1st Cir. 2009); Williams v. City of Brockton, 59 F. Supp. 3d 228 (D. Mass. 2014); Ocean Spray Cranberries, 441 Mass. at 645.

Similarly, Plaintiff's claims under the MPLA and under M.G.L. ch. 151B and Title VII, based on allegations that he sought and was denied a parental leave of absence in November and December 2019, including the individual Defendants' alleged statements related thereto, pertain to discrete acts with easily identifiable dates. When Defendants made the alleged statements, and Plaintiff's request for 12 weeks of uninterrupted leave was denied, he had sufficient facts to ascertain whether or not his rights were being violated. In fact, according to the Complaint,

Defendants Piper's and Fetten's alleged statements *did* raise such concerns, prompting Plaintiff to reach out to Defendant Barlow in December 2019.  These allegations confirm that Plaintiff's awareness and duty to assert his rights were triggered before January 5, 2020.  Therefore, the continuing violation doctrine is inapplicable to resurrect Plaintiff's claims predicated upon Defendants' failure to grant him a parental leave of absence or on the alleged conduct any of the individual Defendants related thereto[3], all of which are time-barred. See Ocean Spray Cranberries, Inc., 441 Mass. at 644–45; see also Morrison v. Northern Essex Commun. Coll., 780 N.E.2d 132, 140–41 (Mass. App. Ct. 2002) (statute of limitations on discrete acts of sexual harassment began to run from the date of each act).

WHEREFORE, the Defendants request that the Court enter an order (1) granting Defendants' partial motion to dismiss and (2) granting such other and further relief as is equitable and just.

Respectfully submitted,
LEDVANCE LLC, KARSTEN FETTEN,
MARCI PIPER and ALAN BARLOW,
By their Attorney,

/s/ Stephanie Smith
Stephanie Smith (BBO #660572)
CASNER & EDWARDS, LLP
303 Congress Street
Boston, MA 02210
617-426-5900
Dated:  November 12, 2021          smith@casneredwards.com

---

[3] As previously noted, the Complaint is entirely devoid of any other alleged conduct by Defendants Piper and Barlow after December 2019, whether related to Plaintiff's leave or otherwise.

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper and electronic copies will be sent to those indicated as non-registered participants on November 12, 2021.

/s/ Stephanie Smith

60950.5/854054.2