United States District Court
District of Massachusetts

```
―――――――――――――――――
                        )
Ahmed Eissa,            )
                        )
          Plaintiff,    )
                        )
          v.            )
                        )        Civil Action No.
LEDVANCE LLC et al.,    )        21-11515-NMG
                        )
          Defendants.   )
                        )
―――――――――――――――――
```

**MEMORANDUM & ORDER**

**GORTON, J.**

In August, 2020, shortly after returning from a term of parental leave and following a period of remote work caused by the COVID-19 pandemic, plaintiff Ahmed Eissa ("Eissa" or "plaintiff") was fired by his employer, Ledvance LLC ("Ledvance") as part of a reduction in force. Thereafter, Eissa brought this action, alleging, <u>inter alia</u>, that he was terminated in retaliation for having taken leave and asserting claims under federal and state law against Ledvance and several of its employees (together, "defendants"). Pending before the Court is the motion of defendants to dismiss most of those claims (Docket No. 5). For the reasons that follow, that motion will be allowed, in part, and denied, in part.

-1-

I.  **Background**

The following facts are drawn from the complaint and other documents susceptible to judicial notice.  As required, they are taken as true for the purpose of the pending motion. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Eissa is a native of Egypt.  In August, 2018, he began working as a product manager for Ledvance, a company that sells general lighting equipment for lighting professionals and end users.  During the following year, he received positive reviews for his performance.  In October, 2019, following the birth of his child, he sought to avail himself of the 12 weeks of paternity leave offered by Ledvance to its employees.

Eissa was met with immediate resistance in that endeavor. When he inquired with Marci Piper ("Piper"), Ledvance's human resources representative, she acknowledged that he was entitled to paternity leave under company policies but discouraged him from taking it. She advised him against spending so much time away from the company and informed him that there was "not much precedence" (sic) for men taking parental leave.  Guardedly, Eissa inquired whether taking leave would jeopardize his employment.  In response, Piper told him that people would wonder if the company really needed to retain an employee if it "subsists without the employee" for a long period of time.

A conversation with his supervisor, Karsten Fetten ("Fetten"), fostered similar concerns. In November, 2019, Eissa informed Fetten that he and his family were planning to travel to Egypt while he was on paternity leave and intended to return after 12 weeks. Fetten demurred and proposed a part-time, 20-hour per week arrangement with a proportionate decrease in pay. Eissa, concerned about his job security, agreed to consider such an arrangement.

In December 2019, Eissa inquired of Fetten about the status of his leave request. Fetten stated that it was still under consideration and, when informed that Eissa had already purchased tickets to Egypt, Fetten responded that Eissa's decision "may have consequences" and that a "decision will have to be made". Fetten then mentioned a former employee who was terminated after requesting a remote work arrangement.

Troubled by the tenuous state of his employment, Eissa sent an email to Alan Barlow ("Barlow" and together with Piper and Fetten, "the individual defendants"), the Vice President of Human Resources at Ledvance, about his leave request and conversations with Piper and Fetten. The complaint does not describe the substance of Barlow's response but the email discouraged Eissa whose concerns were "increased". Ultimately, Barlow did not take any remedial action concerning Eissa's leave.

-3-

At some point thereafter, Fetten informed Eissa that
Ledvance would approve intermittent leave, pursuant to which
Eissa was to work part-time from Egypt.  Eissa, "left with no
other feasible option", acquiesced to the proposal.  During his
leave, Eissa was assigned to a support role rather than his
usual product manager position and his wages were reduced by
50%.  Nevertheless, Eissa avers that while working part-time in
Egypt, he continued to perform his full complement of work
duties successfully.

That fragile resolution proved short-lived, however, and in
March, 2020, Fetten asked Eissa to suspend his leave and return
to the United States for a quarterly sales meeting, scheduled at
the end of March.  Eissa agreed to do so but his flight back to
the United States was canceled due to the COVID-19 pandemic and
then he was directed by Fetten to "stay put" in Egypt.  Shortly
thereafter, Egypt suspended all international travel.

Eissa continued to work remotely until he was able to
return to the United States in late July, 2020.  Shortly after
returning, he was terminated as part of a reduction in force.
Eissa was one of seven employees terminated by Ledvance as part
of the layoff and the only employee from his product management
team.  He asserts that all of the retained product managers were
white and had not taken family leave.

On October 30, 2020, Eissa filed a charge of discrimination ("the Charge") with the Massachusetts Commission Against Discrimination ("the MCAD"). He later withdrew that Charge and the MCAD issued him a right-to-sue letter in August, 2021. At around the same time, he commenced the present action in the Massachusetts Superior Court for Middlesex County. Defendants timely removed the action to this Court and, shortly thereafter, filed the pending motion seeking dismissal of most of plaintiff's claims.

## II.  Motion to Dismiss

### A. Legal Standard

To survive a motion under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to

judicial notice. <u>Haley</u> v. <u>City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011).  A court also may not disregard properly pled factual allegations even if actual proof of those facts is improbable. <u>Ocasio-Hernandez</u>, 640 F.3d at 12.  Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. <u>Id.</u> at 13.

### B. Application

Eissa's complaint includes of the following nine counts: 1) discrimination on the basis of gender, in violation of M.G.L. c. 151B and Title VII, against Ledvance ("Count I"), 2) violation of the Massachusetts Parental Leave Act, M.G.L. c. 149, § 105D (the "MPLA"), against Ledvance ("Count II") 3) discrimination on the basis of ethnicity or national origin, in violation of M.G.L. c. 151B and Title VII, against Ledvance ("Count III"), violation of M.G.L. c. 151B and Title VII, against the individual defendants ("Count IV"), interference with his right to parental leave, in violation of the Family and Medical Leave Act ("the FMLA"), 29 U.S.C. § 2611 <u>et</u> <u>seq.</u>, against all defendants ("Count V"), retaliatory termination, in violation of the FMLA, against Ledvance, Piper and Fetten ("Count VI"), intentional interference with contractual relations, against the individual defendants ("Count VII"), intentional infliction of emotional distress, against the individual defendants ("Count

VIII") and breach of the implied covenant of good faith and fair dealing, against Ledvance ("Count IX").  Defendants seek dismissal of most of those counts on the basis of a myriad of often-overlapping defenses.

### 1. Statute of limitations (Counts I-IV)

Defendants first contend that Eissa's Chapter 151B, MPLA and Title VII claims, set forth in Counts I-IV, were untimely presented to the MCAD and the EEOC, respectively, and, as a result, cannot be maintained here.  Eissa disagrees and insists that the continuing violation doctrine saves his claims.

The continuing violation doctrine incorporates the judgment of courts and legislatures that some discrimination claims, such as those alleging a hostile work environment, concern a wrong of a unitary, continuing nature and thus are timely brought if any part of that wrong occurred within the limitations period. 804 C.M.R. § 1.04(3) (providing for continuing-violation exception to the time limits for filing complaint with the MCAD); see Silvestris v. Tantasqua Reg'l Sch. Dist., 847 N.E.2d 328, 339 (Mass. 2006).  Where, on the other hand, the claim is based on a discrete event, such as a failure to pay wages, the continuing violation doctrine does not apply because the alleged wrong "give[s] rise to a cause of action each time [it] occur[s] and [is] easily identifiable". Lee v. Howard Hughes Medical Inst.,

No. 19-12289-NMG, 2022 U.S. Dist. LEXIS 103098, at *27-28 (D. Mass. June 9, 2022) (quoting Silvestris, 847 N.E.2d at 339).

A plaintiff seeking to avail himself of the continuing violation doctrine must show 1) that the alleged wrong was of a continuing nature, 2) that at least one substantially related act occurred during the limitations period and 3) that the defendants' actions outside of the limitations period did not trigger his "awareness and duty" to assert his rights, i.e., that he could not have formed a reasonable belief that he was being discriminated against at the time. Welch v. People's United Bank, No. 20-11390, 2021 U.S. Dist. LEXIS 71974, at *19-20 (D. Mass. Apr. 13, 2021) (citing Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrim'n, 808 N.E.2d 257, 266 (Mass. 2004)).

Eissa filed his charge with the MCAD on October 30, 2020.[1] Charges which allege discrimination under Chapter 151B and Title VII, such as Eissa's, must be filed within 300 days of the alleged discriminatory act and, accordingly, any claims arising from conduct predating January 4, 2020, are barred by the statute of limitations unless Eissa can show that the continuing

---

[1] A charge of discrimination filed with the MCAD is "effectively filed with the EEOC simultaneously". Goldstein v. Brigham & Women's Faulkner Hosp., Inc., 80 F. Supp. 3d 317, 321 n.5 (D. Mass. 2015).

violation doctrine applies to preserve them.[2] Hall v. FMR Corp.,
667 F. Supp. 2d 185, 196 n.10 (D. Mass. 2009) (explaining that
"[t]he failure to file a timely charge with the MCAD requires
the dismissal of any subsequent lawsuit.").

To that end, Eissa asserts that his conversations with
Piper and Fetten in November, 2019, "tie into a broader pattern
of discriminatory conduct that [is] all substantially related",
constituting a continuing violation not barred by the statute of
limitations.  That argument does not withstand scrutiny.  As a
preliminary matter, the Court is unconvinced that a failure to
grant a request for paternity leave is the sort of wrongdoing to
which the continuing violation doctrine applies.  The continuing
violation doctrine has been most commonly invoked in the context
of hostile work environment claims, in which a series of
separate acts collectively constitute a single unlawful
practice.  See, e.g. Tobin v. Liberty Mut. Ins. Co., 553 F.3d
121, 130 (1st Cir. 2009) (noting that the "classic example" of a
continuing violation is a hostile work environment); but see
DaCosta v. Town of Plymouth, No. 11-12133-MBB, 2014 WL 2998986,

---

[2] Violations of M.G.L. c. 149, § 105D are subject to the same
limitations period. See M.G.L. c. 151B, § 4(11A) (designating as
an unlawful practice under c. 151B retaliation under c. 149,
§ 105D, or the failure of an employer to otherwise comply with
that section); Global NAPs, Inc. v. Awiszus, 930 N.E.2d 1262,
1267-68 (Mass. 2010) (explaining that the MCAD is responsible
for enforcing the Massachusetts Parental Leave Act).

at *15 (D. Mass. July 1, 2014) (noting that continuing violation doctrine has been applied to claims alleging, inter alia, failure to accommodate disabled employee and collecting cases). It has not generally been applied to discrete discriminatory acts such as a termination, refusal to transfer, failure to promote or failure to accommodate. Tobin, 553 F.3d at 130. Under the circumstances presented by this case, the alleged failure to accommodate Eissa's request for leave is the kind of discrete act which Massachusetts courts have held not to constitute a continuing violation. Ocean Spray, 808 N.E.2d at 268 ("When an employer refuses an employee's request for a reasonable accommodation, the refusal is a discrete discriminatory act triggering the statutory limitations period.").

Even if the continuing violation doctrine applied to a denial-of-leave claim such as this one, however, it would be of no use to Eissa for two reasons. First, it is undisputed that he knew about the alleged discrimination before January 4, 2020. While it may not be clear exactly when he became aware that he had been discriminated against, it was certainly no later than when he departed for Egypt in December, 2020, on a leave substantially dissimilar to what he requested and what he alleges the law affords him. Id. Second, and relatedly, to the extent the conduct of which Eissa complains——i.e. the

interference with his leave—was of a continuing nature, it was complete by the date of his departure.

Although the effects of the purported violation may have persisted through the first half of 2020, and although the fact that Eissa took leave may even have precipitated a second, separate statutory violation, i.e. the allegedly retaliatory termination, neither fact is material here. DeNovellis v. Shalala, 124 F.3d 298, 309 (1st Cir. 1997) (noting that a discriminatory act, not merely the effects of a prior discriminatory act, must occur during the limitations period and collecting cases); see also Campbell v. Mitre Corp., No. 98-11768-RWZ, 2001 U.S. Dist. LEXIS 13258, at *5-6 (D. Mass. June 1, 2001).

### 2. Family and Medical Leave Act (Count V)

Barlow seeks dismissal of Eissa's claim for willful violation of the FMLA, contending that he fully and accurately informed Eissa of his rights under the statute.[3]

The FMLA creates a right to take certain kinds of leave and protects employees against 1) employer interference with that right and 2) retaliation against them for their exercise of it. Limoli v. Delta Air Lines, Inc., No. 18-10561-FDS, 2019 U.S. Dist. LEXIS 203125, at *12 (D. Mass. Nov. 22, 2019) (citing

---

[3] Eissa brings this count against all defendants but only Barlow has moved to dismiss it.

Hodgens v. General Dynamics Corp., 144 F.3d 151, 159-60 (1st Cir. 1998).  A claim of interference with FMLA-protected rights requires the plaintiff to show that

> 1) [he] was eligible for the FMLA's protections; (2) [his] employer was covered by the FMLA; (3) [he] was entitled to leave under the FMLA; (4) [he] gave [his] employer notice of [his] intention to take leave; and (5) [his] employer denied [him] FMLA benefits to which [he] was entitled.

Chacon v. Brigham & Women's Hosp., 99 F. Supp. 3d 207, 214 (D. Mass. 2015) (quoting Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 728 n.8 (1st Cir. 2014)).

Although the First Circuit Court of Appeals ("the First Circuit") has yet to address whether the FMLA, which by its terms extends to "employers", Boadi v. Ctr. for Human Dev., 239 F. Supp. 3d 333, 348 (D. Mass. 2017), allows for individual liability, the trend nationally (and among the district courts in this circuit) has been to permit suits seeking to recover from supervisors under the statute, see Gregg v. Northeastern Univ., No. 21-11495-JGD, 2022 U.S. Dist. LEXIS 72240, at *10-11 (D. Mass. Apr. 20, 2022); Reilly v. Cox Enters., No. 13-785S, 2014 U.S. Dist. LEXIS 128452, at *26-27 (D.R.I. Apr. 16, 2014).

When considering whether a supervisor is subject to individual liability under the FMLA, courts in this circuit have applied the corresponding test for individual liability under the Fair Labor Standards Act ("the FLSA"). Gregg, 2022 U.S. Dist. LEXIS 72240, at *11 (citing Boadi, 239 F. Supp. 3d at

348); see Brunelle v. Cytec Plastics, Inc., 225 F. Supp. 2d 67, 82 (D. Me. 2002).  That test asks whether the supervisor, here Barlow, "exercised sufficient control over the employee" to constitute an "employer" for the purposes of the statute. Limoli, 2019 U.S. Dist. LEXIS 203125, at *14 (quoting Chacon, 99 F. Supp. 3d at 213 n.5).  Relevant considerations include whether the defendant:

> (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) maintained employment records and (5) had personal responsibility for making decisions that contributed to the alleged violation.

Id. (internal punctuation omitted).  The second and fifth factors carry the most weight. Gregg, 2022 U.S. Dist. LEXIS 72240, at *11-12.

Application of those two related inquiries to this case is made more difficult by the failure of the parties to offer substantive argument with respect to either.  Nevertheless, the Court concludes that, as presently pled, the complaint is insufficient to survive Barlow's motion to dismiss.  Eissa claims that Barlow, the Vice President of Human Resources, had a supervisory role in that department and, when presented with an alleged FMLA violation, contributed to it through his inaction. The Court expresses no opinion at this time as to whether that would suffice to state a claim for violation of the FMLA,

however, because Eissa has failed to proffer any allegations or
make any argument concerning Barlow's status as an "employer"
under the statute.  Because that defect may perhaps still be
remedied, the plaintiff will be given the opportunity to seek
permission to amend his complaint if he believes the facts so
warrant. See Gregg, 2022 U.S. Dist. LEXIS 72240, at *3 n.3
(citing Coby v. Fresenius Med. Care Holdings, Inc. (In re
Fresenius Granuflo/Naturalyte Dialysis Liab. Litig.), 76 F.
Supp. 3d 279, 288 (D. Mass. 2015)).

### 3. Intentional interference with contractual or advantageous business relations (Count VII)

The individual defendants next seek dismissal of Eissa's
claim that they tortiously interfered with his relationship with
Ledvance.  Tortious interference with a contract or business
relationship under Massachusetts law requires the plaintiff to
prove that

> (1) he had a contract with a third party, (2) the defendant
> knowingly induced the third party to break that contract,
> (3) the interference, in addition to being intentional, was
> improper in motive or means and (4) the plaintiff was
> harmed by the defendant's actions.

Psy-Ed Corp. v. Klein, 947 N.E.2d 520, 536 (Mass. 2011); see
also Hamann v. Carpenter, 937 F.3d 86, 93 (1st Cir. 2019).
Where, as here, the defendants are corporate officials acting
within the scope of their corporate responsibilities, plaintiff
must make an additional showing, namely, that defendants acted

with "actual malice," that is, "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." Psy-Ed Corp., 947 N.E.2d at 536 (quoting Blackstone v. Cashman, 860 N.E.2d 7, 12 (Mass. 2007)).  Although the action complained of need not have been motivated solely by malice, malice must be the "controlling factor" in the defendants' decision. Blackstone, 860 N.E.2d at 19.

While direct evidence of malice is not required, the plaintiff must allege specific facts from which an inference of malice may be drawn. Kelleher v. Lowell Gen. Hosp., 152 N.E.3d 126, 134 (Mass. App. Ct. 2020).  Bare allegations that the defendants' interference was "improper in motive or means" are insufficient. Id.  Rather, plaintiff must demonstrate a link between the defendants' conduct and evidence of spiteful purpose or personal hostility. Sklar v. Beth Israel Deaconess Med. Ctr., 797 N.E.2d 381, 386 (Mass. App. Ct. 2003).

The parties dispute whether Eissa has adequately alleged that the individual defendants 1) acted with the requisite malice and 2) induced his termination.  The Court concludes that Eissa has stated a claim for intentional interference as to Fetten but not as to Piper or Barlow.

Eissa alleges that Fetten implied that he might be fired for taking leave, blamed Eissa for being stuck in Egypt and was so aggressive during a call between the two of them and a Human

Resources representative, Michael Amthor, that Amthor called Eissa immediately after the call ended to check in with him. Those allegations are sufficient to suggest that malice, rather than a legitimate corporate interest, animated Fetten's actions. Although the complaint unsurprisingly contains less detail about the deliberations which culminated in Eissa's discharge, it is plausible that Fetten, his direct supervisor, was involved and that is sufficient to sustain the claim at the pleading stage.

Piper presents a closer question. As alleged, her discouragement of plaintiff's stated intention to take the full period of parental leave might reasonably be seen as related to gendered, discriminatory assumptions unrelated to a legitimate corporate interest. The link between those comments, made by a Human Resources representative without any apparent supervisory responsibility, and Eissa's termination is, however, too tenuous to support a plausible inference of liability and the claim will therefore be dismissed as to Piper. Ocasio-Hernandez, 640 F.3d at 12.

With respect to Barlow, Eissa's allegations――namely, that Barlow failed to investigate and remediate interference with his right to take leave――carry not even a hint of malice. At most, they constitute the sort of careless or unfair business practices consistently held to be insufficient to show spite or animus. See Weber v. Cmty. Teamwork, Inc., 752 N.E.2d 700, 716

-16-

(Mass. 2001); <u>Rando</u> v. <u>Leonard</u>, 826 F.3d 553, 558 (1st Cir. 2016).

### 4. Intentional infliction of emotional distress (Count VIII)

Under Massachusetts law, a plaintiff states a claim for intentional infliction of emotional distress if he alleges that the defendant engaged in extreme and outrageous conduct, without privilege, which caused the plaintiff severe emotional distress. <u>Limone</u> v. <u>United States</u>, 579 F.3d 79, 91 (1st Cir. 2009) (quoting <u>Agis</u> v. <u>Howard Johnson Co.</u>, 355 N.E.2d 315, 318 (Mass. 1976)).  Conduct is extreme and outrageous only if it is "beyond all bounds of decency and . . . utterly intolerable in a civilized community". <u>Sena</u> v. <u>Commonwealth</u>, 629 N.E.2d 986, 994 (Mass. 1994).

The individual defendants contend that Eissa has failed to plead conduct anywhere near outrageous or distress sufficiently severe.  Alternatively, they assert that the Massachusetts Workers' Compensation Act, M.G.L. c. 152, § 24 <u>et</u> <u>seq.</u> is the exclusive remedy for injuries suffered in the course of employment and precludes maintenance of the tort claim.  The Court need not reach the statutory issue because, even upon the most liberal reading of the complaint, Eissa has failed to allege that the conduct of the individual defendants—motivated though it may have been by animus—was beyond all possible bounds

-17-

of decency.  See Brown v. Nutter, McClennen & Fish, 45 Mass. App. Ct. 212, 213-14 (Mass. App. Ct. 1998).  Nor has Eissa made any allegation concerning his distress beyond a bare recitation of the applicable legal standard.

### 5. Breach of the implied covenant of good faith and fair dealing (Count IX)

Massachusetts law implies a covenant of good faith and fair dealing in every contract. Shaulis v. Nordstrom, Inc., 120 F. Supp. 3d 40, 54 (D. Mass. 2015) (citing Uno Rests. v. Boston Kenmore Realty Corp., 441 Mass. 376, 805 N.E.2d 957, 964 (Mass. 2004)).  In the employment context, a claim for violation of the covenant is actionable only if it seeks to remedy the denial of "readily definable" compensation earned for past service. Gram v. Liberty Mutual Ins. Co., 391 Mass. 333, 335 (1984).  Eissa makes no such allegation here.  Rather, he asserts in cursory fashion in his opposition to the motion to dismiss that he was owed bonuses, a statement not further expounded upon in the brief or in his complaint.

**ORDER**

For the foregoing reasons, the motion of defendants Ledvance LLC, Karsten Fetten, Marci Piper and Alan Barlow to dismiss the complaint (Docket No. 5) is, with respect to Counts I, II, III, IV, V (as to Barlow), VII (as to Piper and Barlow), VIII and IX, **ALLOWED**, but is otherwise **DENIED**.

The following counts against the following defendants remain pending: Count V, against Ledvance, Piper and Fetten, Count VI, against Ledvance, Piper and Fetten and Count VII against Fetten.

**So ordered.**

      /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated: August 17, 2022